This is an appeal by Cotton States Mutual Insurance Company from a declaratory judgment which determined that an automobile liability insurance policy provided coverage for an automobile involved in an accident and that a "non-owned automobile" exclusion in the insurance contract did not apply. We affirm.
On March 30, 1981, John Michalic was involved in an automobile accident in Ozark, Dale County, Alabama. It is undisputed that at the time of the accident Mr. Michalic was driving a 1976 Chevrolet Camaro automobile owned by Sabrina Richardson, who subsequently married Bruce Michalic and became Mr. John Michalic's daughter-in-law. At the time of the accident, John Michalic had policies with plaintiff, Cotton States, covering four vehicles, but none of the policies covered the 1976 Chevrolet Camaro.
The policies of insurance issued to John Michalic with respect to the vehicles he did own extended coverage for the use of non-owned vehicles. The term non-owned vehicle is defined in the policies as follows: *Page 928 
 "`Non-owned automobile" means a private passenger, farm or utility automobile or trailer not owned by, registered in the name of, or furnished or available for the regular use of either the named insured or any relative." (Emphasis added.)
The tendencies of the evidence which the trial judge could have believed were as follows:
Sabrina Richardson owned a 1976 Camaro, which was insured under her father's policy. She and her boyfriend or fiance, Bruce Michalic (whom she later married on April 18, 1981), often drove each other's car. Bruce Michalic had a pool construction business with his father, John Michalic, and, over the course of approximately nine months, often left Sabrina's car at his father's residence, driving one of the company's vehicles (out of four other vehicles owned by the company or by John Michalic) to various construction sites. Frequently, other employees and workers would leave their cars at John Michalic's house and then proceed to a job, and sometimes there would be two or three cars there besides Bruce's automobiles. The keys to those other automobiles would usually be left at his house; and, sometimes John Michalic would have to move a car blocking his driveway or his mailbox. During the three months prior to March 30, 1981, Sabrina's Chevrolet Camaro was parked at the John Michalic residence from two to four times a week, sometimes remaining overnight when Bruce took a company vehicle to his separate residence. During the six months prior to that period, Sabrina's Camaro was parked at the John Michalic residence but on a less frequent basis.
Sabrina Richardson had told her future father-in-law, John Michalic, that he could use her automobile if he "needed it."
John Michalic had driven Sabrina's Chevrolet Camaro once or twice prior to March 30, 1981, and his wife had driven the car at least once. He and his wife did not have a separate set of keys to the Chevrolet Camaro; but, when the automobile was left at John Michalic's house, the key ring was placed in the same location where the keys to the Michalic vehicles were located. On March 30, 1981, while driving Sabrina Richardson's Camaro, John Michalic was involved in a two-car collision which injured John Holder.
After hearing the testimony, the trial court found:
 "The automobile in question was left at John Michalic's house primarily for convenience. On the occasions that the automobile was parked at Mr. Michalic's home, it was parked there so that he and Bruce could ride to work together and because there was no room at Bruce and Sabrina's house. The car was not left at Mr. Michalic's house so that it would be available for his regular use. Four other vehicles were owned by Mr. Michalic and were available for his regular use. The court finds that the automobile was not left at Mr. Michalic's home so that it would be available for his regular use. The court further finds that by definition `the automobile' was not available for his `regular' use."
The issue now before this Court is whether the trial court committed error in concluding as a matter of law that the Richardson vehicle was not "available for the regular use of either the named insured or any relative."
The insured contends that whether the Chevrolet Camaro was "available for use" was a question of fact and that the findings of the trial court should not be disturbed.
The appellant/insurer argues that as a matter of law, the automobile was not covered because of the language contained in the exclusionary clause, specifically the language which reads"available for the regular use of either the named insured or any relative." (Emphasis added.) The insurer would equate this phrase with "opportunity to use." The insurer argued in its brief:
 "Perhaps the most frequently cited statement regarding the purpose of non-owned vehicle coverage is that of Judge Chesnut in Aler v. Traveler's Indemnity *Page 929 Co., 92 F. Supp. 620, 623 (D.C.Md. 1950), cited by the Court in Winterwerp v. Allstate Insurance Co., 277 Md. 714, 357 A.2d 350, 353 (1976):
 "`. . . The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so.' (Emphasis by the Court).
 "These exclusionary clauses have been held by the majority of courts, including Alabama, to be clear and unambiguous, and hence are not due to be construed against the insurance company and in favor of the insured. Alabama Farm Bureau Mutual Casualty Insurance Company v. Preston, 287 Ala. 493, 253 So.2d 4 (1971); DiOrio v. New Jersey Manufacturer's Insurance Company, 79 N.J. 257, 398 A.2d 1274 (1979); Winterwerp v. Allstate Insurance Company, supra; Continental National American Insurance Group v. Vaicunas, 26 Ill. App.3d 835, 325 N.E.2d 747 (1975). LaDoux [LeDoux] v. Iowa National Mutual Insurance Company, 262 N.W.2d 418 (Minn. 1978). The legal meaning and construction of the exclusionary language and its applicability to the particular facts in a given case is a matter of law for the court. Allstate Insurance Company v. Government Employees Insurance Company, 263 A.2d 78 (Me. 1970). It is the contention of the plaintiff, Cotton States, that the trial court erred as a matter of law in its construction and application of the non-ownership exclusion to the facts present in the instant case."
The appellee/insured argues that the policy of this state in regard to such exclusionary clauses has been articulated by this Court in American Automobile Insurance Co. v. English,266 Ala. 80, 94 So.2d 397 (1957), and Alabama Farm Bureau v.Preston, 287 Ala. 493, 253 So.2d 4 (1971), and that such a clause is not to be construed to mean "opportunity for use," as is urged by the appellant:
 "[The non-owned exclusion] simply means that [the insured] is not covered by the Farm Bureau policy here involved while operating other automobiles or trucks owned by him or furnished to him for regular use by someone else. We think it obvious that the [the exclusion] is designed to prevent an insured, who owns or regularly uses more than one vehicle, from securing one policy of insurance covering a specific vehicle and operating other vehicles under the coverage of that one policy."
American Automobile Insurance Co. v. English, 266 Ala. 80, 86,94 So.2d 397, 403 (1957).
The trial judge heard the case without a jury. Where the trial court has taken the testimony without a jury, "the findings of fact made and entered by the trial court will be sustained unless they are clearly and palpably wrong or without supporting evidence or are manifestly unjust." Sterling Oil ofOklahoma, Inc. v. Pack, 291 Ala. 727, 747, 287 So.2d 847, 866
(1973); First Alabama Bank of Montgomery, N.A. v. Martin,425 So.2d 415 (Ala. 1982). We have reviewed the record and find ample evidence to support the trial court's findings of fact.
The issue then comes to whether the trial court correctly applied the law to those facts in concluding that "the automobile was not available for his [the insured's] regular use."
The insured argues that this issue, too, is a question of fact. There are a number of cases holding that whether or not an automobile has been "furnished for the regular use" of another creates a question of fact. Kenilworth Insurance Co. v.Cole, 587 S.W.2d 93 (Mo.Civ.App. 1979); Johnson v. HomeIndemnity Company, 401 S.W.2d 871 (Tex.Civ.App. 1966); StateFarm Mutual Automobile Insurance Company v. Bates,107 Ga. App. 449, 130 S.E.2d 514 (1963); State Farm Mutual Automobile *Page 930 Insurance Co. v. Smith, 206 Va. 280, 142 S.E.2d 562 (1965);National-Ben Franklin Insurance Company of Pittsburgh v.Prather, 109 Ga. App. 459, 136 S.E.2d 499 (1964); Lincombe v.State Farm Mutual Automobile Insurance Co., 166 So.2d 920
(La.App. 1964); Schilling v. Stockel, 26 Wis.2d 525,133 N.W.2d 335 (1965).
Insurer, on the other hand, argues that the issue is one of construction, and so is a question of law. We agree. This does not answer the question to be resolved in this case, however. The law of this state regarding the construction of insurance policies is well settled and clear. "The contract of insurance will be construed strictly against the insurer and liberally in favor of the insured. [Citations omitted.] Ambiguous provisions of an insurance policy will be construed most strongly against the insurer and in favor of the insured." Life Insurance Co. ofGeorgia v. Miller, 292 Ala. 525, 531, 296 So.2d 900, 906
(1974). Exceptions to coverage in a policy of insurance must be interpreted as narrowly as possible in order to provide maximum coverage of the insured. Employee's Insurance Co. of Alabama,Inc. v. Jeff Gin Co., 378 So.2d 693 (Ala. 1979); WestchesterFire Insurance Co. v. Barnett Millworks, Inc., 364 So.2d 1137
(Ala. 1978); Life Insurance Co. of Georgia v. Miller, 292 Ala. 525, 296 So.2d 900, on remand 50 Ala. App. 741, 296 So.2d 907
(1974); see Booker T. Washington Burial Ins. Co. v. Williams,27 Ala. App. 393, 173 So. 269 (1937). Finally, the provisions in an automobile liability policy are to be construed liberally in favor of the insured. United States Fidelity Guaranty Co. v.Baker, 24 Ala. App. 274, 134 So. 894, cert. denied, 223 Ala. 172,134 So. 896, (1931). The trial court, apparently following these rules of construction, found for the insured. This construction of the contract clause does not violate the purpose of exclusionary clauses in automobile liability policies. American Automobile Insurance Co. v. English, supra.
In Alabama Farm Bureau Mut. Cas. Ins. Co. v. Preston, 287 Ala. 493, 253 So.2d 4 (1971), Maddox, J., concurring specially, stated:
 "The so-called `non-owned automobile' clauses are of comparatively recent origin and provide regular insurance coverage to the insured and any relative residing in his household in the infrequent use or casual driving of automobiles other than his own. Usually, such `non-owned automobile' clauses contain language which exclude from such extended coverage any automobile (1) owned by the insured or a member of his household, (2) hired by the insured or a member of his household or (3) provided for the regular use of the insured or a member of his household. The general purpose of the exclusion clause is to prevent a situation in which members of one family or household may have two or more automobiles which are used interchangeably but with only one particular automobile insured. Couch on Insurance, 2d § 45,238. The construction of `non-owned automobile' clauses is governed by the rules used generally in the interpretation and application of contracts of insurance."
Alabama Farm Bureau Mut. Cas. Ins. Co. v. Preston, supra,287 Ala. at 497, 253 So.2d at 7.
We are aided by two state court decisions which have construed the terms "regular" and "available for regular use." The term "regular" has been construed to mean "something of a steady or uniform course, practice or occurrence as opposed to occasional or incidental." Kenilworth Insurance Co. v. Cole,587 S.W.2d 93, 99 (Mo.App. 1979). The term "available for regular use" has been construed to mean that "[t]hat thing to which it refers can be usually and regularly had or be used whenever it is wanted, needed or desired." Kentucky Farm BureauMutual Insurance Co. v. Cook, 590 S.W.2d 885, 890 (Ky.App. 1978).
Taking the facts as found by the trial court, the rules of construction that must be applied in such cases, and the construction given such clauses by other courts, we *Page 931 
hold that the trial court's order is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.